IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33271-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUAN JOSE SERRANO BERRIOS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Juan Serrano Berrios appeals his convictions for

first degree unlawful possession of a firearm and possession of methamphetamine. He

argues that defense counsel provided ineffective assistance by not requesting an *Old

Chief*[1] stipulation to his prior felony conviction, and by not requesting a jury instruction

on the affirmative defense of inadequate notice. Mr. Serrano Berrios also makes a

number of arguments in his statement of additional grounds for review (SAG). We

disagree with Mr. Serrano Berrios's arguments and affirm.

---

[1] *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574
(1997).

FACTS

On August 4, 2014, Mr. Serrano Berrios was walking down the sidewalk with a woman just outside of Moses Lake. Officer Jeffrey Gaddis told Officer Paul Ouimette that Mr. Serrano Berrios was walking down the street. Officer Ouimette knew that Mr. Serrano Berrios had outstanding warrants for his arrest.

Officer Ouimette stopped his police car about 15 feet from Mr. Serrano Berrios and stepped out of the car. Officer Ouimette told Mr. Serrano Berrios to stop, and that he was under arrest. Mr. Serrano Berrios looked startled and took a couple steps down the sidewalk. Officer Ouimette then ordered Mr. Serrano Berrios to stop again, drew his firearm, and ordered Mr. Serrano Berrios to get on the ground. Officer Ouimette quickly observed the sidewalk before Mr. Serrano Berrios got on the ground, and he did not see any items on the sidewalk. Mr. Serrano Berrios then got on the ground and laid on his stomach.

As Mr. Serrano Berrios laid on the ground, he brought his right hand down toward his waistband. Officer Ouimette told Mr. Serrano Berrios to stop reaching in his waistband, and Mr. Serrano Berrios complied. As Officer Ouimette was telling the woman that she needed to step back, Mr. Serrano Berrios again reached down toward his waistband with his right hand. Officer Ouimette again told Mr. Serrano Berrios to stop

2

reaching in his waistband, but Mr. Serrano Berrios did not comply right away. Officer

Ouimette had to repeat the instruction another time or two, and eventually Mr. Serrano

Berrios complied.

Officer Gaddis arrived. Officer Ouimette then went and secured Mr. Serrano

Berrios's hands, and Officer Gaddis handcuffed him. The officers then rolled Mr.

Serrano Berrios onto his side. Officer Gaddis found a handgun underneath Mr. Serrano

Berrios just below his groin area. Officer Gaddis picked up the gun, saw that it was

loaded, and handed it to Officer Ouimette. Officer Ouimette dumped the bullets out of

the magazine and ejected the round from the chamber. Officer Gaddis then emptied Mr.

Serrano Berrios's pockets, and found a small bag containing a substance that he

recognized as methamphetamine.

The State charged Mr. Serrano Berrios with first degree unlawful possession of a

firearm and possession of methamphetamine.[2] The predicate "serious offense" the State

alleged for the first degree unlawful possession charge was Mr. Serrano Berrios's 2011

conviction for attempted second degree burglary. Before trial, defense counsel moved to

dismiss the case on the basis that Mr. Serrano Berrios did not have adequate notice that he

---

[2] The State also charged Mr. Serrano Berrios with carrying a concealed pistol without a license, but later realized that charge is an infraction and not a criminal offense. The trial court dismissed the charge.

3

was ineligible to possess a firearm. Defense counsel argued that Mr. Serrano Berrios never signed the 2011 judgment and sentence, nor did his prior defense counsel. Defense counsel acknowledged that the previous judge orally advised Mr. Serrano Berrios that he was ineligible to possess a firearm at the guilty plea hearing, but argued that Mr. Serrano Berrios never received written notice because English is Mr. Serrano Berrios's second language and the judgment and sentence did not contain a translation certificate.

The trial court denied Mr. Serrano Berrios's motion. The trial court reviewed the plea agreement and transcript of the plea colloquy from Mr. Serrano Berrios's 2011 attempted burglary case, and found that the trial court advised Mr. Serrano Berrios both orally and in writing that he was ineligible to possess firearms per RCW 9.41.047(1). The trial court reasoned that RCW 9.41.047(1) requires trial courts to advise defendants that they are ineligible to possess firearms at the time they are "convicted," and people are "convicted" when they plead guilty—not when the court signs the judgment and sentence. Thus, it did not matter that the judgment and sentence lacked a translation certificate and Mr. Serrano Berrios's signature.

At trial, both police officers testified that they recovered the handgun from under Mr. Serrano Berrios. Defense counsel objected to the gun's admissibility on the grounds that the police never recorded the gun's serial number, and therefore Officer Gaddis could

not testify that the gun the State presented was the same gun he found under Mr. Serrano Berrios. The trial court overruled the objection, finding that it went to the evidence's weight and not its admissibility.

The State then moved to admit the felony judgment and sentence from Mr. Serrano Berrios's 2011 attempted second degree burglary case. Defense counsel objected on the grounds that it included Mr. Serrano Berrios's entire criminal history, and then requested a redacted copy. Defense counsel did not request an *Old Chief* stipulation to Mr. Serrano Berrios's prior attempted second degree burglary conviction.

The State also called a former investigator for the prosecutor's office, Michael Shay. The State had asked Mr. Shay to examine the fingerprints on Mr. Serrano Berrios's 2011 judgment and sentence and compare them to Mr. Serrano Berrios's booking fingerprints from when the officers arrested him in this case. Mr. Shay concluded the fingerprints matched.

During closing arguments, defense counsel argued that Mr. Shay's conclusion that Mr. Serrano Berrios's fingerprints were on the 2011 judgment and sentence could be wrong, given that Mr. Shay's training was outdated and that Mr. Shay had been in administrative positions since his training. Defense counsel also argued that the 2011 judgment and sentence did not contain Mr. Serrano Berrios's signature, his attorney's

signature, or a translation certificate, and therefore Mr. Serrano Berrios likely lacked notice that he was ineligible to possess a firearm. Defense counsel did not propose a jury instruction on the affirmative defense of lack of notice. The jury convicted Mr. Serrano Berrios of both charges. Mr. Serrano Berrios appeals.

## ANALYSIS

*A.     Whether defense counsel provided ineffective assistance*

Mr. Serrano Berrios argues he received ineffective assistance of counsel because defense counsel did not request an *Old Chief* stipulation that he had been convicted of a "serious offense," thus allowing the State to introduce the judgment and sentence from his 2011 attempted second degree burglary conviction. Mr. Serrano Berrios argues the only tactical reason for defense counsel not to stipulate was so he could argue to the jury that Mr. Serrano Berrios lacked notice that he was ineligible to possess a firearm. Mr. Serrano Berrios further argues that this tactical reason was frustrated by his counsel's failure to request a jury instruction on lack of notice, thus resulting in the prejudicial conviction being needlessly presented to the jury.

Under RCW 9.41.040(1)(a), a person commits unlawful possession of a firearm in the first degree "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . in this state or elsewhere

6

of any serious offense as defined in this chapter." "'The existence of a constitutionally valid prior conviction is an essential element of the offense, one the State must prove beyond a reasonable doubt.'" *State v. Lopez*, 107 Wn. App. 270, 276, 27 P.3d 237 (2001) (quoting *State v. Reed*, 84 Wn. App. 379, 384, 928 P.2d 469 (1997)), *aff'd*, 147 Wn.2d 515, 55 P.3d 609 (2002).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel.[3] *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant receives ineffective assistance if the attorney's conduct (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) there is a reasonable probability the attorney's conduct affected the case's outcome. *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). "There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 665. Ineffective assistance is not established if defense counsel's trial conduct can be characterized as legitimate trial strategy or tactic. *Id.*

---

[3] Because ineffective assistance of counsel is an issue of constitutional magnitude, it may be considered for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

7

Ineffective assistance is a mixed question of law and fact and is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

1. *Whether or not requesting an* Old Chief *stipulation was ineffective assistance*

When the name or nature of a prior offense that serves as an element of a current offense might taint the verdict, and when the purpose of the evidence is solely to prove the element of the prior offense, the defendant may stipulate to the previous conviction. *Old Chief*, 519 U.S. at 174. "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that [the legislature] thought should bar a convict from possessing a gun." *Id.* at 190-91. A trial court must accept a defendant's offer to stipulate to the existence of a prior conviction when evidence of the prior conviction is unduly prejudicial. *State v. Johnson*, 90 Wn. App. 54, 62-63, 950 P.2d 981 (1998).

Mr. Serrano Berrios is correct that there are strategic reasons to stipulate to a predicate conviction under certain circumstances. Here, stipulating to Mr. Serrano Berrios's prior conviction as an unnamed felony would have kept his attempted second degree burglary conviction from reaching the jury.

However, applying the strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable

8

professional judgment, defense counsel's decision not to stipulate to Mr. Serrano

Berrios's prior conviction can be properly characterized as a strategic one. It is clear that

defense counsel thoughtfully considered the prejudicial nature of the information

contained in the judgment and sentence, given that he objected to portions of the

document and persuaded the trial court to require the State to redact Mr. Serrano

Berrios's entire criminal history from it.

During closing argument, defense counsel argued that Mr. Shay's training was

outdated, and suggested that Mr. Shay erroneously concluded that the fingerprints on the

2011 judgment and sentence belonged to Mr. Serrano Berrios. Moreover, by naming the

conviction—attempted second degree burglary—defense counsel prevented the jury from

speculating that Mr. Serrano Berrios may have been convicted of a much more serious,

violent crime. Thus, given the nature of the prior conviction, not stipulating cost Mr.

Serrano Berrios little in terms of prejudice and opened up a way for defense counsel to

attack the State's evidence. It was a legitimate tactical decision.

2. *Whether or not requesting a jury instruction on inadequate notice was ineffective assistance*

Lack of notice of the firearm prohibition is an affirmative defense to unlawful

possession of a firearm. *State v. Breitung*, 173 Wn.2d 393, 403, 267 P.3d 1012 (2011).

To succeed, defendants must show that when they were convicted of the prior offense,

9

they did not receive either oral or written notice that it was illegal for them to own a firearm. *Id.*; *see also* RCW 9.41.047(1)(a) (requiring the convicting court to notify a person orally and in writing when a conviction makes him or her ineligible to possess a firearm). A person is "convicted" at the time "a plea of guilty has been accepted, or a verdict of guilty has been filed, notwithstanding the pendency of . . . sentencing or disposition." RCW 9.41.040(3).

A defendant is entitled to a jury instruction supporting his or her theory of the case if there is substantial evidence in the record supporting his or her theory. *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009). Thus, in order for defense counsel's failure to request a jury instruction on an affirmative defense to constitute deficient performance, the defendant must show that had counsel requested this instruction, the trial court would have given it. *Id.*

Here, the trial court's pretrial ruling made clear that Mr. Serrano Berrios received both oral and written notice that he was ineligible to possess a firearm per RCW 9.41.047(1)(a). At his change of plea hearing in the attempted second degree burglary case, the trial court orally advised Mr. Serrano Berrios that he could not possess a firearm or have one under his control. Mr. Serrano Berrios acknowledged that he understood. Mr. Serrano Berrios's guilty plea in that case also stated that

10

No. 33271-3-III
*State v. Serrano Berrios*

> I may not possess, own, or have under my control any firearm unless my right to do so is restored by a superior court in Washington State, and by a federal court if required. I must immediately surrender any concealed pistol license.

Clerk's Papers at 46. Mr. Serrano Berrios told the court that the interpreter read the guilty plea to him in Spanish and that his attorney had explained it to him. Mr. Serrano Berrios signed the guilty plea, and his previous attorney and the interpreter both certified that they interpreted and explained it to him.

Because the trial court correctly determined before trial that Mr. Serrano Berrios received adequate notice, the trial court would not have given a jury instruction on the affirmative defense of inadequate notice even if defense counsel had requested one. Therefore, defense counsel did not perform deficiently.

SAG ISSUE I: *Whether Mr. Serrano Berrios received adequate notice that he could not possess a firearm*

In his first SAG, Mr. Serrano Berrios appears to argue that he never received adequate notice that he was ineligible to possess a firearm, given that he never signed the judgment and sentence from his 2011 attempted second degree burglary conviction and that the interpreter in that case never read him his rights. As discussed above, the trial court gave Mr. Serrano Berrios both oral and written notice at the guilty plea hearing. Because RCW 9.41.047(1)(a) only requires oral and written notice upon *conviction*, and

11

Mr. Serrano Berrios was convicted when he pleaded guilty, the fact that his judgment and sentence was never signed or interpreted is immaterial for notice purposes.

SAG ISSUE II: *Whether the trial court abused its discretion when it found the State authenticated the firearm*

Mr. Serrano Berrios argues that the police officers "did not do a sufficient investigation of the gun. They did not take fingerprints, [or] run the pin number." SAG (translation). From the context of the trial, it appears that Mr. Serrano Berrios takes issue with the trial court's finding that the State properly authenticated the handgun. "This court reviews a trial court's decision regarding the authenticity of an exhibit under an abuse of discretion standard." *State v. Williams*, 136 Wn. App. 486, 499, 150 P.3d 111 (2007).

To be admissible, evidence must be authenticated or identified as to what the proponent claims it is. ER 901(a). Evidence may be identified by a witness with personal knowledge. ER 901(b)(1). "The proponent need not identify the evidence with absolute certainty and eliminate every possibility of alteration or substitution." *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). Minor discrepancies or uncertainty affect only the weight of the evidence, not its admissibility. *Id.* Here, Officer Gaddis testified that the Hi-Point handgun the State presented in court was the same weapon he found under

Mr. Serrano Berrios. He also testified that he put the gun in an evidence bag, and included his initials, a case number, and an evidence number on the bag.

SAG ISSUE III: *Whether the trial court denied Mr. Serrano Berrios an interpreter*

Mr. Serrano Berrios also appears to argue that the trial court denied him an interpreter. "[T]he right of a defendant in a criminal case to have an interpreter is based upon the Sixth Amendment constitutional right to confront witnesses and 'the right inherent in a fair trial to be present at one's own trial.'" *State v. Gonzales-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999) (quoting *State v. Woo Won Choi*, 55 Wn. App. 895, 901, 781 P.2d 505 (1989)). Providing interpreters for non-English-speaking persons is also statutorily required per chapter 2.43 RCW. Here, the record demonstrates that the trial court provided Mr. Serrano Berrios a certified court interpreter for trial and for every other court proceeding throughout the case.

SAG ISSUE IV: *Whether appellate counsel's brief adequately addresses the issues pertaining to Mr. Serrano Berrios's case*

Mr. Serrano Berrios's final SAG argument appears to take issue with the specific argument his appellate counsel makes in his brief. However, Mr. Serrano Berrios's SAG is his opportunity to identify and discuss additional issues pertaining to his case that he believes "have not been adequately addressed by the brief filed by [his] counsel." RAP

13

No. 33271-3-III
*State v. Serrano Berrios*

10.10(a). While Mr. Serrano Berrios appears to argue that his appellate counsel's brief does not adequately address "what we are appealing," Mr. Serrano Berrios fails to specify what he *is* appealing, apart from the issues he already raises in his other SAG arguments. Accordingly, Mr. Serrano Berrios has failed to "inform the court of the nature and occurrence of alleged errors." *See* RAP 10.10(c).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Korsmo, J.

14